**APPALACHIAN ELECTRIC POWER COMPANY and Affiliated Corporations,**

v.

**UNITED STATES.**

**No. 48–56.**

United States Court of Claims.
Jan. 15, 1958.

N. Barr Miller, Washington, D. C., for plaintiff. Haynes & Miller, J. Marvin Haynes, F. Eberhart Haynes, Oscar L. Tyree, and Joseph H. Sheppard, Washington, D. C., were on the briefs.

John A. Rees, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Washington, D.C., was on the brief.

MADDEN, Judge.

The plaintiff sues for the refund of $128,249.99, a part of the income and excess profits taxes collected from it for the year 1945. It says that the part of its income on which the taxes in question were assessed was not ordinary income but was capital gain, not subject to the excess profits tax, and subject to a lower rate of income tax than that applicable to ordinary income.

The plaintiff was, in 1936 and theretofore, an operating electric public utility in the State of Virginia. It generated its electricity with steam power. On ·August 10, 1936, it made a contract with

the East Tennessee Light and Power Company, hereinafter called Tennessee. Tennessee was an electric public utility company operating in Tennessee. Its electricity was generated by water power. The contract between the plaintiff and Tennessee recited that each of the parties had, at times, surplus electric energy; that their lines and facilities came close together near Bristol, Virginia, on the eastern border of Tennessee; and that it would be advantageous to both parties if their lines and facilities could be connected so that each party could take and use any temporary surplus energy which the other might have available. It then provided, in great detail, for the construction of the facilities necessary to effect the interchange of energy and for the measurement of and payment for the energy which each might deliver to the other under the contract. The contract was to be in force for a period of ten years from the date on which the interconnections were completed.

While the contract between the plaintiff and Tennessee was in effect, the Tennessee Valley Authority (TVA) acquired all the operating properties of Tennessee and succeeded to that company's obligations and rights under its contract with the plaintiff, and also to Tennessee's obligations and rights under a contract which Tennessee had with Holston River Power Company, hereinafter called Holston. Under this latter contract, Tennessee supplied Holston with the electric energy which that company delivered to its customers.

On August 1, 1945, TVA and the plaintiff and Holston entered into an agreement canceling the agreement of August 10, 1936, between the plaintiff and Tennessee, which agreement still had some two years to run, and making a new agreement under which TVA would no longer take energy from the plaintiff to supply the area formerly supplied by Tennessee, and Holston, instead of receiving its energy from TVA as the successor to Tennessee, would now receive its energy from the plaintiff, which had

in the meantime become, indirectly, the owner of the stock of Holston.

The new agreement was long and detailed. It also provided for various interchanges of energy and of the use of facilities, and for the current payment for those items. The term of the agreement was five years, with automatic renewal from year to year thereafter unless terminated on six months' written notice.

On the same date as that of the new agreement, TVA, the plaintiff, and Holston agreed, in a separate document, on the "cancellation charges" which should be made in connection with the cancellation of the plaintiff's 1936 contract with Tennessee, and Tennessee's contract with Holston. Each of those contracts was treated as having, before its cancellation on August 1, 1945, two years yet to run. The plaintiff's contract with Tennessee was treated as having been worth $90,000 a year to the plaintiff, and Tennessee's contract with Holston was treated as having been worth $15,000 a year to Tennessee. That meant that TVA, as successor to Tennessee, would owe the plaintiff $180,000 on account of the cancellation of the plaintiff-Tennessee contract and the plaintiff would owe TVA $30,000 on account of the cancellation of the Tennessee-Holston contract. The difference of $150,000 TVA agreed to pay to the plaintiff in five annual installments of $30,000 each, the first installment being payable on June 30, 1946.

The Commissioner of Internal Revenue assessed the $150,000 as ordinary income to the plaintiff in 1945, thus making it subject to the excess profits tax, which was not applicable in the years after 1945, and to the income tax at full rates. The plaintiff, as we have seen, claims that the $150,000 was capital gain, not subject to the excess profits tax, and taxable as income only at a 25-percent rate. If it is held to be capital gain, the plaintiff waives any question as to whether 1945 was the right taxable year. If, however, it is held to be ordinary income, the plaintiff urges that

1945 was not the right taxable year. That is important for, among others, the reason that, as we have said, the excess profits tax was not applicable in the years after 1945.

■ The plaintiff says that the August 1, 1945, agreement between it and the TVA and Holston was "the sale or exchange of a capital asset held for more than 6 months" within the meaning of section 117(a) (4) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 117(a) (4). It says, rightly, that an intangible such as a chose in action may be a capital asset, within the meaning of the statute. Of course bonds, stocks, and other such valuables are capital assets for all purposes including tax purposes. The same is true of less conventional choses in action. If in fact they have value, they are of course assets, and if they are susceptible of sale or exchange and are in fact sold or exchanged, they should receive capital assets treatment for tax purposes. See Goff U.C.I.R., 20 T.C. 561, affirmed 3 Cir., 1954, 212 F.2d 875, certiorari denied 348 U.S. 829, 75 S.Ct. 52, 99 L.Ed. 654.

In the instant case the contract between the plaintiff and Tennessee was, in 1945, of value to the plaintiff and was detrimental to TVA, the successor to Tennessee. If it had not been so, TVA would not have paid at the rate of $90,000 a year for its cancellation two years before its expiration. And Tennessee's contract to supply energy to Holston was of value to Tennessee, since TVA, in the cancellation transaction, took a credit, as successor of Tennessee, of $15,000 a year on account of that contract.

■ Our question is whether the August 1, 1945 transaction was an exchange. The plaintiff says that it was, with $150,000 boot money. It says that the plaintiff, in 1945, had the right to furnish energy to TVA as the successor of Tennessee and get paid for it, and that, by the 1945 agreement with TVA, it transferred the right to TVA to supply its own power to itself, and that that was an exchange, within the meaning of the tax statute.

We do not know what element or elements of the 1936 contract between the plaintiff and Tennessee caused it to be worth $90,000 a year to the plaintiff in 1945. Under the 1936 contract, the plaintiff not only had the right to be paid by Tennessee for the energy which Tennessee was obliged to take, or pay for, but the plaintiff had the right to receive energy from Tennessee at a stipulated price. It may well be that the value of its contract lay, or principally lay, in the latter feature rather than the former.

The plaintiff's contention that the 1945 agreement with TVA transferred to TVA the right to supply energy to itself does not bear analysis. Tennessee and its successor TVA had at all times, of course, the right to use their own energy, rather than taking energy from the plaintiff. Since they had to pay the plaintiff whether they used its energy or not, they would naturally take it and use it. But their corresponding obligation to supply energy to the plaintiff at a stipulated rate was a burden to them, if they could more profitably dispose of their energy elsewhere. Something of the same analysis would apply to the cancellation of Tennessee's right to supply energy to Holston, or at least to get paid for it, and the simultaneous acquisition by the plaintiff of the right to supply energy to Holston, and get paid for it.

The August 1945 transaction was complicated, and it is difficult to place it in a definite category. It was, in the main, a cancellation of existing rights and obligations and the creation of new ones. But the plaintiff says that that characterization does not mean that the gain from the transaction may not be a capital gain. It cites Commissioner v. Golonsky, 3 Cir., 1952, 200 F.2d 72, affirming 16 T.C. 1450. There a landlord paid his tenant to surrender the premises and cancel the lease prior to the expiration of the term of the lease. The courts held that the amount received by the tenant was capital gain, since he had an interest

 

in the land and sold his interest for the surrender money.

We have doubts as to whether the surrender, or cancellation, of a contract would call for the same tax treatment as the surrender of a lease. If, for example, an employment contract is canceled during its term upon the payment by the employer of a sum satisfactory to the employee, the amount paid is, in all reality, salary or wages, and should be taxed as such. In the same way, the cancellation, in consideration of a payment of money, of any other kind of a contract out of which one or the other of the parties hopes to make a profit, which, if he performed the contract and made the profit, would be taxable income, would seem to result in the earlier receipt of a part of the anticipated profit, with similar tax consequences.

In the instant case, the figures set by the plaintiff and TVA as the consideration for the cancellation of their respective contracts represented their estimates of the profits which they would have received if the contracts had been performed until their termination. Those profits, if received as such, would have been taxable as ordinary income. We conclude that the payments received by the plaintiff for foregoing the chance to make those profits were so taxable.

It now becomes necessary to consider the plaintiff's alternate contention, viz., that 1945 was not the right taxable year for the taxing of the $150,000. As we have seen, the TVA, on August 1, 1945, promised to pay the plaintiff $150,000 in equal annual installments of $30,000 on June 30, 1946, and thereafter. The plaintiff kept its accounts on an accrual basis. We think none of the $150,000 was taxable in 1945. If one buys a bond with interest coupons attached which entitle the holder to collect interest semi-annually over 10 or 25 or 50 years, all the interest for all the years is not taxable to him in the year in which the bond was issued. If one has an employment contract for a period of years, he is taxable in any year on only the amount of his salary which comes due in that year.

The plaintiff is entitled to recover, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.

LARAMORE, Judge, took no part in the consideration and decision of this case.